# COLGATE-PALMOLIVE COMPANY
# MEDICAL PLAN

## PLAN # 501

**Amended and Restated Effective January 1, 2011**

# TABLE OF CONTENTS

**Page**

SECTION 1    PURPOSE, EFFECTIVE DATE AND DEFINITIONS.................................. 1

SECTION 2    PARTICIPATION ................................................................. 4

SECTION 3    AMOUNT OF BENEFITS ........................................................ 5

SECTION 4    PAYMENT OF BENEFITS ....................................................... 6

SECTION 5    ADOPTION OF PLAN BY AN AFFILIATED COMPANY ......................... 8

SECTION 6    PLAN ADMINISTRATION ...................................................... 8

SECTION 7    MISCELLANEOUS ............................................................ 10

APPENDIX A: HIPAA PRIVACY ............................................................. 19

EXHIBIT A.................................................................................. 32

EXHIBIT B.................................................................................. 35

## COLGATE-PALMOLIVE COMPANY
## MEDICAL PLAN

### SECTION 1

### PURPOSE, EFFECTIVE DATE AND DEFINITIONS

1.1     Purpose.  This document constitutes the Colgate-Palmolive Company Medical Plan as amended and restated effective as of January 1, 2011.  The Company maintains the Plan for the exclusive benefit of its Eligible Employees and their spouses, dependents and domestic partners.  The Plan provides Benefits through the component benefit programs described in Exhibit C.  Each of these component programs is described in a contract, certificate or booklet issued by an insurance company, a summary plan description, or another governing document (an "applicable document") prepared by the Company or vendor.  A copy of each applicable document is attached to this document in Exhibit C.  This document constitutes the plan document required by ERISA § 402 for each of the component benefit programs.  Effective December 31, 2010, non-VEBA funded retirees eligible for retiree medical coverage from the Company, shall no longer be eligible for coverage under the Plan and shall be eligible for coverage under the Retiree Medical Plan.  Notwithstanding the provisions of any summary plan descriptions, insurance policies, HMO contracts or certificates of coverage set forth in Exhibit B to the contrary, all component benefit programs shall be administered in accordance with the applicable provisions of ERISA, COBRA, HIPAA, as amended, FMLA, USERRA, the Newborns' and Mothers' Health Protection Act, the Women's Health and Cancer Rights Act, the Children's Health Insurance Program Reauthorization Act of 2009 ("CHIPRA"), Michelle's Law, the Mental Health Parity Act of 1996, as amended by the Mental Health Parity and Addiction Equity Act of 2008, the Genetic Information Nondiscrimination Act of 2008, the Patient Protection and Affordable Care Act and all other applicable federal law.

1.2     <u>Effective Date</u>.  The Plan is amended and restated in the form set forth herein, effective as of January 1, 2011.

1.3     <u>Definitions</u>.  The following capitalized terms used in the Plan shall have the following meanings:

(a) "Affiliated Company" shall mean all corporations and other entities presently or hereafter existing, which are members of the Company's controlled group or are under common control with the Company (within the meaning of Section 414 of the Code), but only during the period any such corporation or other entity is a member of such controlled group or under such common control.

(b)     "Benefits" shall mean coverage under the component benefit programs referenced in Section 1.1 and Exhibit B of the Plan to the extent available to an Eligible Employee under the terms of each such component benefit program.

(c)     "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time.  All references to any section of the Code shall be deemed to refer not only to such section but also to any amendment thereof and any successor statutory provision.

(d)     "Company" shall mean Colgate-Palmolive Company, incorporated under the laws of the state of Delaware and any successor by merger, consolidation, purchase or otherwise.

(e)     "Covered Expenses" shall mean the Benefits provided under a component benefit program of this Plan.

(f)     "Eligible Employee" shall mean any Employee, other than one whose employment is covered by a collective bargaining agreement with the Employer (except to the extent such agreement provides for Benefits under this Plan).  Eligible Employee shall not include any individual treated by the Employer at the time services are rendered as an independent contractor for the period the individual is so treated, even if such individual subsequently is retroactively reclassified as a common-law employee for such period.  For any component benefit program listed in Exhibit B, the term Eligible Employee shall include only individuals eligible to both participate in and receive Benefits under said component benefit program.

(g)     "Employee" shall mean any regular full-time employee or any employee classified on the Employer's books and records as a "part-time employee with benefits, provided, however, that the term Employee shall not include interns, independent contractors, temporary, or "leased employees" as defined under Section 414(n) of the Code or any retired employee of the Company, and further provided, that in no event shall any individual who is not defined as an employee by the applicable document listed in Exhibit B be considered an Employee for that component benefit program of the Plan.  Any individual who is excluded from eligibility or participation pursuant to the applicable document used by an insurer, HMO, third-party administrator, or other vendor with respect to a component benefit program of any component part of the Plan (listed in Exhibit B) shall not be an Employee hereunder for purposes of said component benefit program.

(h)     "Employer" shall mean the Company or a Member Company.

(i)     "ERISA" shall mean the Employee Retirement Income Security

Act of 1974, as amended.

(j)     "Member Company" shall mean any Affiliated Company which has adopted this Plan with the consent of the Company.

(k)     "Named Fiduciary" shall mean the Company, or its delegate.

(l)     "Participant" shall mean any Eligible Employee who has elected or is deemed to have elected to participate in the Plan in accordance with the provisions of Section 2.

(m)     "Plan" shall mean the Colgate-Palmolive Company Medical Plan, as amended and restated effective as of January 1, 2011, which is set forth in this document and is intended for the exclusive benefit of Employees and to provide such Employees with Benefits.

(n)     "Plan Administrator" shall mean the Company or its delegate.

(o)     "Plan Year" shall mean a twelve-month period ending on December 31st.

## SECTION 2

## PARTICIPATION

a.  Eligible Employees and their Family Members.  Each Eligible Employee shall be

eligible to participate under this Plan with respect to any Benefit as of his date of

initial eligibility for any program which constitutes such Benefit, the date he

becomes an Eligible Employee, or the effective date that his collective bargaining

unit becomes covered by a component benefit program described in Exhibit B

which constitutes such Benefit, whichever is latest.  For any component Benefit,

the term Eligible Employee shall include only individuals eligible to both participate in and receive Benefits under said component benefit program. Likewise, eligibility of an Eligible Employee's spouse, dependents, or domestic partner to both participate and receive Benefits under any component benefit program will be determined by said component benefit program.

b. <u>Notification</u>.  The Plan Administrator shall give all Eligible Employees reasonable notification of their right to elect to receive Benefits under the Plan and of the availability and terms of the Plan.

c. <u>Enrollment for Benefits</u>.  An Eligible Employee may enroll for Benefits by completing and filing an election on such form or under such method (described in Paragraph 2.4 below) with the Plan Administrator prior to the date of his initial eligibility or as otherwise provided by the terms of any component benefit program.

d. <u>Election Form</u>.  The election form or method shall permit an Employee to elect Benefits for the Plan Year pursuant to an applicable component benefit program listed in Exhibit B.

## SECTION 3

## AMOUNT OF BENEFITS

a. <u>Amount of Benefits</u>.  Benefits under this Plan shall be in the form of payments by a component benefit program described in Exhibit B.

b. <u>Benefits Not Expanded</u>.  No provision hereof shall be construed so as to expand the availability or extent of coverage under the terms of any insurance or other benefit coverage constituting a Benefit hereunder.

c. <u>Qualified Medical Child Support Orders</u>.

i. To the extent provided by applicable law, the Plan Administrator shall extend coverage under the Plan to the person or persons named in a Qualified Medical Child Support Order, as determined pursuant (i) to the procedures regarding qualified medical child support orders ("QMCSO Procedures") in Exhibit A, or (ii) the procedures, if any, regarding qualified medical child support orders of a component benefit program listed in Exhibit B.

ii. The Plan Administrator shall have the right to amend the QMCSO Procedures, as provided therein.

## SECTION 4

### PAYMENT OF BENEFITS

a. <u>Source of Payments</u>.  Covered Expenses will be paid by the applicable insurer, HMO, third-party administrator, or other vendor with respect to a component benefit program listed in Exhibit C.  Some Benefits under the Plan are self-funded and some are fully- insured.

b.  <u>Payment of Covered Expenses</u>.  Payment of Covered Expenses will be made by the applicable insurer, HMO, third-party administrator, or other vendor with respect to a component benefit program listed in Exhibit B.

c.  <u>Failure to Pay</u>.  If a Participant (including a Participant whose employment with the Employer has been terminated) shall fail to pay costs at such time or times and in such manner as is required by the Employer, his or her period of coverage for the Benefit shall terminate in accordance with the terms of a component benefit program listed in Exhibit B, provided, however, that in the case of a person receiving Benefits pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, such coverage will terminate in accordance with the procedures set forth in the documentation applicable to the component benefit program listed in Exhibit B.

d.  <u>Denials and Appealing Claim Denials</u>.  Claims for Benefits under the Plan are to be submitted to the applicable insurer, HMO, third-party administrator, or other vendor with respect to a component benefit program listed in Exhibit B.  Payment of claims under the Plan will be made by the applicable insurer, HMO, third-party administrator, or other vendor with respect to a component benefit program as provided by its contract or other document governing the component benefit program listed in Exhibit B.  When an Participant's claim for Benefits under the Plan has been denied, the insurer, HMO, third-party administrator, or other vendor with respect to a component benefit program shall provide, in

accordance with ERISA and the regulations issued thereunder, notice to the Employee, in writing, of the denial within the time frame required under ERISA and the regulations issued thereunder, setting forth the specific reasons for such denial and appeal procedures under an applicable insurance, or HMO contract, or other document used to administer a component benefit program listed in Exhibit B by a third-party administrator or other vendor with respect to a component benefit program.

e.  <u>FMLA Leave of Absence</u>.  Benefits provided hereunder shall continue during a leave of absence under the Family and Medical Leave Act of 1993, as amended ("FMLA"), provided the Participant makes any required payments to the Employer on a timely basis in accordance with the provisions of the applicable contract or other document governing the component benefit program listed in Exhibit B.

## SECTION 5

## ADOPTION OF PLAN BY AN AFFILIATED COMPANY

Any Affiliated Company may, with the consent of the Company, become a Member Company under the Plan.  The Member Company shall agree to be bound by all of the provisions of the Plan and any amendments thereto and shall agree to pay its share of the expenses of the Plan as they may be determined from time to time in the manner specified by the Company.

## SECTION 6

## PLAN ADMINISTRATION

a. General.  The administration of the Plan is under the supervision of the Plan Administrator.

The principal duty of the Plan Administrator is to see that the Plan is carried out, in

accordance with its terms, for the exclusive benefit of persons entitled to participate in the

Plan.  The administrative duties of the Plan Administrator include, but are not limited to,

interpreting the Plan, prescribing Plan procedures, determining eligibility for and the amount

of Benefits, and authorizing Benefit payments and gathering information necessary for

administering the Plan.  The Plan Administrator may delegate any of these administrative

duties among one or more persons or entities, provided that such delegation is in writing,

expressly identifies the delegatee(s) and expressly describes the nature and scope of the

delegated responsibility.

The Plan Administrator has the discretionary authority to interpret the Plan in

order to make eligibility and Benefit determinations as it may determine in its sole and absolute

discretion.  The Plan Administrator also has the sole and absolute discretionary authority to make

factual determinations as to whether any individual is entitled to receive any Benefits under the

Plan.

b.   Power and Authority of the insurers, HMOs, third-party administrators, and other

vendors for the component benefit programs listed in Exhibit B.  Certain Benefits under

the Plan are provided by a contract with either an insurer, HMO, third-party

administrator, or other vendor with respect to a component benefit program listed in

Exhibit B.  The insurance companies, HMOs, third-party administrators, and other

vendors with respect to a component benefit program listed in Exhibit B, are responsible

for (a) determining eligibility for, and the amount of, any Benefits payable under their respective component benefit programs, and (b) prescribing claims procedures to be followed and the claims forms to be used by Participants pursuant to their respective component benefit programs, and (c) other functions assigned to them pursuant to their contract or agreement with the Plan or the Company.

c.  Claims.  Claims for Benefits under the Plan are to be submitted to the applicable insurer, HMO, third-party administrator, or other vendor with respect to a component benefit program as provided by its contract or other document governing the component benefit program listed in Exhibit B.  Payment of claims under the Plan will be made by the applicable insurance company, HMO, third-party administrator, or other vendor with respect to a component benefit program as provided by its contract or other document governing the component benefit program listed in Exhibit B.  When a covered person's claim for Benefits under the Plan has been denied, the insurer, HMO, third-party administrator, or other vendor with respect to a component benefit program shall provide, in accordance with ERISA and the regulations issued thereunder, notice to the Employee, in writing, of the denial within the time frame required under ERISA and the regulations issued thereunder, setting forth the specific reasons for such denial and appeal procedures.

## SECTION 7

## MISCELLANEOUS

a. <u>Named Fiduciary</u>.  The Company shall have all the duties and liabilities assigned to it as Named Fiduciary pursuant to Section 402 of ERISA.  As such, the Named Fiduciary (or its designee) shall have the exclusive right, power, and authority, in its sole and absolute discretion, to administer, apply and interpret the Plan and any other Plan documents and to decide all matters arising in connection with the operation or administration of the Plan. Without limiting the generality of the foregoing, the Named Fiduciary (or its designee) shall have the sole and absolute discretionary authority:

    i.   to take all actions and make all decisions with respect to the eligibility for, and the amount of, benefits payable under the Plan;

    ii.   to formulate, interpret and apply rules, regulations and policies necessary to administer the Plan in accordance with its terms;

    iii.   to decide questions, including legal or factual questions, relating to the calculation and payment of Benefits under the Plan;

    iv.   to resolve and/or clarify any ambiguities, inconsistencies and omissions arising under the Plan or other Plan documents; and

    v.   except as provided to the contrary under the Plan and applicable law, to process, and approve or deny, Benefit claims and rule on any Benefit exclusions.

All determinations made by the Named Fiduciary (or its designee) with respect to any matter arising under the Plan and any other Plan documents shall be final and binding on all parties.  If any such determination shall involve a question of law, the Named Fiduciary (or its designee) may rely and act upon the advice of counsel with respect thereto.

b.  <u>Allocation of Fiduciary Responsibilities</u>.  The Company may allocate certain of its fiduciary responsibilities among others and/or designate other persons to carry out certain of its fiduciary responsibilities in accordance with and subject to the limitations of Section 405 of ERISA.  Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan.  The Company and any fiduciary designated by the Company as aforesaid may employ one or more persons to render advice with respect to their responsibilities under the Plan.

c.  <u>Nonliability for Allocated Responsibilities</u>.  Neither the Company nor any other fiduciary shall be liable for an act or omission of another person in carrying out any fiduciary responsibility where such fiduciary responsibility is or may be allocated to such other person by the Plan or pursuant to a procedure established by the Plan except to the extent that:

i.  The Company or such fiduciary participated knowingly in, or knowingly undertook to conceal, an act or omission of such other person, knowing such act or omission to be a breach of fiduciary responsibility;

ii.  The Company or such fiduciary, by its or his failure to comply with Section 404(a)(1) of ERISA (or any successor statutory provision) in the

administration of its or his specific responsibilities which give rise to its or his status as named fiduciary or fiduciary, has enabled such other person to commit a breach of fiduciary responsibility;

iii. The Company or such fiduciary has knowledge of a breach of fiduciary responsibility by such other person, unless it or he makes reasonable efforts under the circumstances to remedy the breach; or

iv. The Company has violated its duties under Section 404(a)(1) of ERISA (or any successor statutory provision):

1. With respect to the allocation of fiduciary responsibilities or the designation of persons other than the Company to carry out fiduciary responsibilities under the Plan;

2. With respect to the establishment or implementation of procedures for allocating fiduciary responsibilities or for designating persons other than the Company to carry out fiduciary responsibilities under the Plan; or

3. in continuing the allocation of fiduciary responsibilities or the designation of persons other than the Company to carry out fiduciary responsibilities under the Plan.

d. <u>Fiscal Records</u>.  The fiscal records of the Plan are to be maintained on the basis of the Plan Year.

e.  <u>Non-assignability</u>.  Benefits under the Plan are not in any way subject to the debts or other obligations of the persons entitled thereto and may not voluntarily or involuntarily be sold, transferred or assigned.

f.  <u>No Vested Interest or Property Rights</u>.  No individual shall have a right to benefits under the Plan except as specified herein; and in no event shall any right to benefits under the Plan be or become vested.  No individual has any right, title, or interest in the property of the Company or the Employer by virtue of the Plan, nor is any person entitled to interest on any benefit amounts that may be allocated or available to him or her.

g.  <u>Employment Rights</u>.  Employment rights of a Participant shall not be deemed to be enlarged or diminished by reason of the establishment of the Plan, and the Participant shall not have any right to be retained in the service of the Employer that he would not otherwise have.  The Plan is a voluntary undertaking of the Employer and does not constitute a contract with any person.  The Plan is not an inducement or condition of an Employee's employment with any Employer.  Neither the establishment of the Plan, nor any modification thereof, nor any payments hereunder, shall be construed as giving to any Employee or any other person, any legal or equitable rights against his or her Employer, the Company, or their shareholders, directors, officers, employees or agents, or as giving any person the right to be retained in the employ of the Employer.

h.  <u>Limit on Liability</u>.  Except to the extent required under applicable law, nothing contained in the Plan shall impose on the Plan Administrator or any directors, officers or Employees of the Employer any liability for the payment of Benefits under the Plan.

i. **Action to Comply with Law**. If the Plan Administrator determines, before or during the Plan Year, that the Plan may fail to satisfy for such Plan Year any nondiscrimination requirement imposed by the Code, the Plan Administrator shall take such action as the Plan Administrator deems appropriate, under rules uniformly applicable to similarly situated Participants, to assure compliance with such requirement or limitation. Such action may include, without limitation, a modification of elections with respect to those persons or groups of persons affected by the nondiscrimination requirements or limitations on any Benefit and the affected Participants shall be deemed to consent to such action by reason of accepting any Benefit hereunder.

j. **Amendment, Merger and Termination**. The Plan or any component part thereof may at any time be amended, merged or terminated by action of the Company.

k. **Governing Law**. The provisions of this Plan shall be construed, regulated and administered according to the provisions of ERISA and the Code, and to the extent not inconsistent therewith, in accordance with the laws of the State of New York.

l. **Funding Policy**. It is the funding policy of the Plan that all Plan Benefits are to be provided under, and in accordance with, the provisions of the insurance contracts, HMO contracts, or other documentation used to administer Benefits by a third-party administrator or other vendor with respect to a component benefit program listed in Exhibit B, provided, however, that any payments made to or credited to the Employer in accordance with retroactive rate adjustments, experience rating, or demutualization distribution provisions, if any, of the insurance or HMO contracts shall be the separate property of the Employer and shall not constitute Plan assets. Benefits shall be deemed

to come first from amounts contributed by Employees and then from amounts contributed by the Employer.

The insurance contracts and HMO contracts and other documentation used to administer the Benefits listed in Exhibit B provide for receipt of premium and other payments from the Company and, if they provide any Benefits on a contributory basis, the premium or other payments shall consist of contributions of the Employer and contributions of the Employees covered under the Benefit; otherwise the premium payments shall consist of contributions of the Employer only.  Whether or not contributions are to be made by the Employees and the amount of any such contributions is subject to change by the Company or the equivalent thereto at any Member Company with respect to its Employees' participation in the Plan.

Insurance premiums for Eligible Employees and their family members are paid in part by the Company out of its general assets, and where required by a component benefit program, by Employees.  Contributions for any self-funded component benefit programs are also made, in part, by the Company out of its general assets and in part by Employees.  The Plan Administrator provides a schedule of the applicable premiums during open enrollment periods and upon request.

The Company reserves the unlimited right to change, modify, cancel or otherwise terminate any of the funding arrangements including, by way of example and not by way of limitation, the right to change insurance carriers and the right to provide previously insured benefits on a partially insured or fully uninsured basis.

m.   <u>Right to offset future payments and to recover payments</u>.  In the event a payment or the amount of a payment is made erroneously to an individual, the Plan shall have the right to reduce future payments payable to or on behalf of such individual by the amount of the erroneous or excess payment.  This right to offset shall not limit the right of the Plan to recover an erroneous or excess payment in any other manner.  Whenever a payment has been made by the Plan, including erroneous payments, in a total amount in excess of the amount payable under the Plan, irrespective of to whom paid, the Plan shall have the right to recover such payments, to the extent of the excess, from the person to or for whom the payment was made.

n.   <u>Misrepresentation or Fraud</u>.  A Participant or other person who receives benefits under the Plan as a result of false, incomplete, or incorrect information or a misleading or fraudulent representation may be required to repay all amounts paid by the Plan and may be liable for all costs of collection, including attorney's fees and court costs.  The Plan Administrator shall decide such matters on a case by case basis and may choose to deny such individual future eligibility under the Plan. The Plan may rescind a Participant's coverage under the Plan if the Participant (a) performs an act, practice or omission that constitutes fraud in an enrollment form or in a claim for benefits, or (b) makes an intentional misrepresentation of material fact to the Plan Administrator regarding information material to eligibility for Benefits.

o.   <u>Expenses</u>.  All expenses of the Plan shall be paid from Employee contributions or by the Plan, unless otherwise paid by the Employer.  The Employer may advance expenses to the Plan, subject to reimbursement, without obligating itself to pay such expenses.

p. <u>Disclaimer</u>.  The Company makes no assertion or warranty about health care services and supplies that Participants and covered persons obtain reimbursement for as Plan benefits, or whether Plan benefits will be excludable from Participants' gross income for federal or state income tax purposes.

q. <u>Reliance</u>.  The Board of Directors, the Company, the Employer, the Plan Administrator, an HMO, the claims administrator and anyone to whom the Plan's operation or administration is delegated may rely conclusively on any advice, opinion, valuation, or other information furnished by any actuary, accountant, appraiser, legal counsel, or physician the Plan engages or employs.  A good faith action or omission based on this reliance is binding on all parties, and no liability can be incurred for it except as the law requires.  No liability shall be incurred for any other action or omission of the Board of Directors, the Company, the Employer or their employees, except for willful misconduct or willful breach of duty to the Plan.

r. <u>Waiver</u>.  No term, condition, or provision of the Plan shall be deemed waived unless the purported waiver is in a writing signed by the party to be charged.  No written waiver shall be deemed a continuing waiver unless so specifically stated in the writing, and only for the stated period, and such waiver shall operate only as to the specific term, condition, or provision waived.

s. <u>Notice</u>.  No notice or communication in connection with the Plan made by a claimant, an Employee, or a covered person shall be effective unless duly executed on a form provided or approved by, and filed with, the appropriate Plan Administrator (or his or her representative).

IN WITNESS WHEREOF, the Company has caused this instrument to be executed this *28* day of *Dec* , 2010.

Colgate-Palmolive Company

By: _____

Title _____

## APPENDIX A

## HIPAA PRIVACY

## PROTECTION OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION

### SECTION A-1          GENERAL

**A-1.1 Limited Applicability.** This Appendix A is for the sole and limited purpose of complying with the Standards for Privacy of Individually Identifiable Health Information, 45 CFR § 164.102 et seq., as amended from time to time, and any successor thereto (the "Privacy Rule"). This Appendix A shall not affect, or be taken into account in determining, the benefits under the Plan with respect to any individual. This Appendix A shall apply only to those component benefit programs that constitute covered entities under 45CFR § 160.103. To the extent that any of these provisions are no longer required, they shall be deemed deleted and shall have no further force or effect. For purposes of complying with HIPAA, this Plan may be considered a "hybrid entity" to the extent it has both health plan and non-health plan functions and components. Only the health plan functions and components of the Plan may be subject to HIPAA.

**A-1.2 Interpretation.** This Appendix A is intended to comply with the Privacy Rule and shall be construed in a manner that will effectuate this purpose. This Appendix A shall not be construed in a manner that is inconsistent with the stated purpose.

**A-1.3 Effective Date.** The original effective date of this Appendix A is April 14, 2003.

## SECTION A-2        DEFINITIONS

**A-2.1  General.**  For purposes of this Appendix A, the following terms shall have the meanings given to them below.  To the extent not defined for purposes of this Appendix A, capitalized terms shall have the meanings given to them in the Plan.

"**De-identified Information**" shall be defined as individually identifiable health information that has been de-identified in accordance with the requirements of 45 CFR § 164.514(b), or any successor thereto.  De-identified Information is not subject to the Privacy Rule.

"**Health Maintenance Organization**" shall be defined as it is in 45 CFR § 160.103, or any successor thereto.

"**Health Insurance Issuer**" shall be defined as it is in 45 CFR § 160.103, or any successor thereto.

"**PHI**" shall be defined as it is in 45 CFR § 164.501, or any successor thereto.

"**Participation and Enrollment Information**" shall be defined as the information described in 45 CFR § 164.504(f)(1)(iii), or any successor thereto.

"**Plan Administration Functions**" shall be defined as those activities, and only those activities, that meets the definition of "payment" or "health care operations" under 45 CFR § 164.501, or any successor thereto.

"**Plan Sponsor**" shall be defined as it is Section A-3.1 hereof.  "**Privacy Official**" shall be defined as it is in Section A-4.1 hereof.

"**Settlor Functions**" shall be defined as the functions described in 45 CFR § 164.504(f)(1)(ii)(A) and (B), or any successor thereto.

"**Summary Health Information**" shall be defined as it is in 45 CFR § 164.504(a), or any successor thereto.

## SECTION A-3        PLAN SPONSOR

**A-3.1  Identity of Plan Sponsor.**

a. The Company shall be the Plan Sponsor for purposes of the Privacy Rule when performing Plan Administration Functions or Settlor Functions, when acting on behalf of the Plan with respect to its obligations under the Privacy Rule, and when acting on behalf of the Plan's participants and beneficiaries with respect to Participation and Enrollment Information.

b. The Company's Global Benefits Consultant shall act as Privacy Official for the Plan Sponsor, and shall be entitled to delegate its powers and responsibilities in accordance with its usual practices.

c. Individuals and classes of individuals identified in Section A-5.2 hereof shall be considered part of the Plan Sponsor.

**A-3.2  Responsibilities and Undertakings.**

a. The Plan Sponsor shall be responsible for making any necessary certifications to the Plan.  Such certifications shall be delivered to the Plan's Privacy Official.

b. The Plan Sponsor also undertakes and agrees that it:

   i. Shall not use or disclose PHI except as specified in Section A-5 of this Appendix A.

   ii. Shall require any agents or subcontractors to whom it discloses PHI to agree to the same restrictions on the use and disclosure of PHI as apply to the Plan Sponsor;

   iii. Shall not use or disclose PHI for any employment-related actions of the Company;

   iv. Shall not use or disclose PHI in connection with any other benefits or benefit plan, program, or arrangement of the Company (except to the extent that such other benefits, or benefit plan, program, or arrangement is part of an organized health care arrangement of which the Plan also is a part).

   v. Shall report to the Privacy Official any uses or disclosures of PHI inconsistent with the terms of this Appendix A of which it becomes aware.

   vi. Shall make PHI available in accordance with an individual's right of access in accordance with the Plan's Privacy Rule policies and procedures.

vii. Shall make PHI available for amendment and shall incorporate amendments in accordance with the Plan's Privacy Rule policies and procedures of the Plan.

viii. Shall make information available to provide any required accounting of disclosures of PHI in accordance with the Plan's Privacy Rule policies and procedures.

ix. Shall make available to the Secretary of Health and Human Services its internal practices, books, and records relating to the use and disclosure of PHI from the Plan for purposes of determining the Plan's compliance with the Privacy Rule.

x. Shall, if feasible, return to the Plan or destroy any PHI from the Plan that it maintains in any form, and shall retain no copies of the PHI when the PHI is no longer needed for the purpose for which disclosure was originally made. If it is not feasible to return or destroy the PHI, the Plan Sponsor agrees that it shall further limit any uses and disclosures to those purposes that make the return or the destruction of the information not feasible.

xi. Shall ensure that adequate separation between the Plan Sponsor and the Plan is established.

## SECTION A-4  PRIVACY OFFICIAL

**A-4.1  Identity of Privacy Official.**  The Privacy Official shall be the Company's Global Benefits Consultant.

**A-4.2  Power and Authority of the Privacy Official.**  The Privacy Official shall be entitled to delegate its powers and responsibilities in accordance with its usual practices.

**A-4.3  Responsibilities of the Privacy Official.**  The Privacy Official shall have the duties and responsibilities specified in the job description attached hereto as Exhibit 1. Such duties and responsibilities shall include accepting and verifying the accuracy and completeness of any certification provided by the Plan Sponsor with respect to disclosures and uses of PHI, and transmitting the certification to any Health Insurance Issuers or Health Maintenance Organizations with respect to the Plan in order to permit them to disclose information to the Plan Sponsor based on such certification.

SECTION A-5        USES AND DISCLOSURES OF PROTECTED HEALTH
                   INFORMATION

A-5.1  Permitted Uses and Disclosures of PHI

a.    Certification.  The Plan, and any Health Insurance Issuer or Health Maintenance
      Organization with respect to the Plan, may disclose PHI to the Plan Sponsor only
      following receipt by the Plan, and any Health Insurance Issuer or Health
      Maintenance Organization with respect to the Plan, of the Plan Sponsor's
      certification that the Plan has been amended in accordance with the requirements
      of the Privacy Rule.

      i.  Plan Administration and Payment Functions.  The following uses and
      disclosures of PHI by the Plan Sponsor for purposes of plan administration and
      payment are permitted provided they are consistent with 45 CFR §
      164.502(a)(1)(ii) or (iii), and any successors thereto:

          1.   Disclosures necessary to adjudicate appeal of denied claims (including
               disclosures to any necessary external experts in accordance with the
               Plan's claims review procedures).

          2.   Disclosures necessary to provide assistance to participants and
               beneficiaries in the claims process (i.e., claims advocacy).

          3.   Disclosures necessary to provide information for purposes of selecting
               and contracting with service providers to the Plan.

          4.   Disclosures necessary for:

               (a)    Obtaining premiums

               (b)    Providing reimbursement for the provision of healthcare

               (c)    Determining coverage under a plan

               (d)    Determining cost sharing amounts

               (e)    Billing

               (f)    Collection activities

(g)  Obtaining payment under a contract for reinsurance (including stop-loss insurance and excess of loss insurance)

(h)  Determining medical necessity of appropriateness of care

(i)  Determining eligibility for enrollment in a plan

(j)  Determining coordination of benefits

(k)  Subrogation activities

(l)  Claims management

(m)  Health care data processing

(n)  Utilization review activities (e.g., precertification/preauthorization. concurrent/retrospective review)

(o)  Conducting quality assessment and improvement activities

(p)  Protocol development

(q)  Contacting health care providers or patients to tell them about possible alternative treatment plans

(r)  Evaluating practitioner and provider performance

(s)  Training of health care and non-health care professionals

(t)  Obtaining or canceling a contract for reinsurance or risk relating to claims for health care (including stop-loss insurance and excess of loss insurance)

(u)  Conducting or arranging medical review, legal services, and auditing functions

(v)   Business planning and development (e.g., developing/improving methods of payment or coverage policies)

(w)   Customer service, including the provision of data analysis

(x)   Population-based activities relating to improving health or reducing health care costs

(y)   Case management and care coordination

(z)   Reviewing provider competence or qualifications

(aa)  Evaluating health plan performance

(bb)  Accreditation, certification, licensing, or credentialing activities

(cc)  Underwriting, premium rating, and other activities relating to the creation, renewal or replacement of a contract of health insurance or health benefits

(dd)  Fraud and abuse detection programs

(ee)  Management activities relating to implementation and compliance with the Privacy Rule

(ff)  Creating de-identified health information or a limited data set

(gg)  Resolution of internal grievances

   a.  Compliance with Privacy Rule.  The following uses and disclosures of PHI by the Plan Sponsor for purposes of complying with the Privacy Rule are permitted to the extent necessary for compliance.

      i.  Uses and disclosures required under 45 CFR § 1 64.502(a)(2)(i) and (ii), or any successors thereto.

    ii.  **Uses and disclosures permitted without permission from an individual under the following provisions of the Privacy Rule, or any successors thereto:**

**(A)**    45 CFR § 164.502(a)(i) (to the individual);

**(B)**    45 CFR § 164.512 (specified uses and disclosures);

**(C)**    45 CFR § 164.504(e) (disclosures to Business Associates);

**(D)**    45 CFR § 164.502(a)(i)(iii) (incidental disclosures).

    i.  **Uses and disclosures permitted only with explicit or implicit authorization under 45 CFR § 164.508 or 45 CFR § 164.510, or any successors thereto.**

    ii.  **Uses and disclosures permitted because the PHI has been cleansed.  Under the following provisions of the Privacy Rule, or any successors thereto:**

**(A)**    45 CFR § 164.514(b) (de-identified information);

**(B)**    45 CFR § 164.514(e) (limited data sets).

    i.**Participation and Enrollment Information. Participation and Enrollment Information may be disclosed as necessary to the Plan Sponsor.**

    ii. **Summary Health Information.  Summary Health Information may be disclosed to the Plan Sponsor for the limited purpose of performing Settlor Functions.**

    iii. **De-Identified Information.  De-Identified Information is not subject to the Privacy Rule and may be disclosed to the Plan Sponsor at any time.**

A-5.2  Individuals With Access to PHI

a.     For purposes of the Privacy Rule, the following individuals or groups of individuals who are under the direct control of the Plan Sponsor will be treated as the workforce of the Plan Sponsor, and are permitted to have access to PHI disclosed by the Plan or any Health Insurance Issuer or Health Maintenance Organization for the purposes specified.

> i. Global Benefits Department staff (and any Employee of a Member Company designated as a member of the Global Benefits Department staff), and
>
> ii. HR Information Center staff.

b.     Any characterization of an individual as being under the direct control of the Plan Sponsor is exclusively for the purpose of the Privacy Rule and has no other significance. Such characterization for purposes of the Privacy Rule does not, for example, create any employment relationship or result in any entitlement to benefits under this Plan or any other benefit plan, scheme, or arrangement of the Company.

c.     The Privacy Official and his or her delegates, if any, are permitted to have access to PHI disclosed by the Plan and any Health Insurance Issuer or Health Maintenance Organization with respect to the Plan.

**A-5.3  Limitations on Disclosures of, Access to, and Uses of PHI.** PHI may be disclosed from the Plan only for Plan Administration Functions performed on behalf of the Plan, and the other purposes listed in Section A-5.1, above. Any employees or other persons listed in Section A-5.2 hereof shall have access to PHI only to perform Plan Administration Functions, and other functions listed in Section A-5.1, above, on behalf of the Plan.

**SECTION A-6      NONCOMPLIANCE WITH ESTABLISHED LIMITATIONS ON ACCESS, DISCLOSURE, AND USE OF PHI**

**A-6.1 Noncompliance.**  If the Plan Sponsor becomes aware of the fact that an employee or other individual listed in Section A-5.2 hereof has failed to comply with the access or use limitations on PHI described in A-5.1 hereof, the Plan Sponsor shall inform the Privacy Official and the Privacy Official shall determine in accordance with the Plan's Privacy Rule policies and procedures, what sanctions, if any, should be imposed.

**Exhibit A-1 to Appendix A**

Position Title: Colgate-Palmolive Company Medical Plan Privacy Official

General Description: The Colgate-Palmolive Company Medical Plan's privacy official is an employee of Colgate-Palmolive Company, and is considered part of the Colgate-Palmolive Company Medical Plan's plan-sponsor workforce.  The privacy official is responsible for overseeing Colgate-Palmolive Company Medical Plan's activities relating to its development and implementation of policies and procedures to ensure the privacy of, and access to, protected health information as set forth in the federal Privacy Rule.  The privacy official is also responsible for overseeing the Colgate-Palmolive Company Medical Plan's maintenance of, and adherence, to these policies.

Responsibilities:

- Take a lead role and assist in the formation, implementation, and maintenance of the Plan's privacy policies and procedures.

- Maintain and ensure proper distribution of the Plan's privacy notice.

- Perform an initial review of the uses and disclosures of Plan-related protected health information.

- Coordinate with Colgate-Palmolive Company's compliance department to ensure ongoing compliance with the Privacy Rule and any applicable state privacy laws.

- Perform or supervise the delivery of privacy training to the Plan's plan-sponsor workforce.

- Take a lead role and assist in drafting appropriate business associate agreement provisions; assist in identifying business associate service providers; develop appropriate monitoring under the Privacy Rule of business associate arrangements.

- Implement and oversee the administration of participant and beneficiary rights under the Privacy Rule, including the right to access, right to request amendment, right to an accounting, and the right to request privacy protections.

- Implement a process for tracking all disclosures of protected health information that must be tracked and accounted for (upon participant or beneficiary request) under the Privacy Rule.

- Establish and administer a system for receiving, documenting, tracking, investigating, and taking action on all complaints concerning the Plan's privacy policies and procedures or compliance with the Privacy Rule.

- Monitor legal changes and advancements in technology to ensure continued compliance.

- Maintain (or supervise the maintenance of) all documentation required by the Privacy Rule.

- Establish sanctions for failure to comply with the group health Plan's privacy policies and procedures.

- Cooperate with the U.S. Department of Health and Human Services, Office of Civil Rights, other legal entities, and Colgate-Palmolive Company's compliance department in any compliance reviews or investigations.

- Be the key contact and information source for all issues or questions relating to the Plan's privacy treatment of participant and beneficiary protected health information.

Qualifications:

- Knowledge of the Privacy Rule and applicable state privacy laws.

- Understanding of Privacy Rule as applied to group health plans.

## EXHIBIT A

### Procedures Regarding Qualified Medical Child Support Orders

        Section 1.      General.  The Plan shall extend medical coverage to the person or persons named in a Qualified Medical Child Support Order, as defined in Section 2 below, in the form and to the extent provided in such order.

        Section 2.      Qualified Medical Child Support Orders.  In order to constitute a Qualified Medical Child Support Order, the order must meet all of the following requirements:

        (a)      The order must create or recognize the existence of the right of an Alternate Recipient, as defined in Section 5, or must assign to an Alternate Recipient the right, to receive Benefits for which a Participant or Beneficiary is eligible under the Plan.

        (b)      The order must constitute a judgment, decree or order (including approval of a settlement agreement) which (i) provides for child support with respect to a child of a Participant under the Plan or provides for health Benefit coverage to such a child, is made pursuant to a state domestic relations law (including a community property law), and relates to Benefits under the Plan, or (ii) enforces a law relating to medical child support described in Section 1908 of the Social Security Act (as added by the Omnibus Budget Reconciliation Act of 1993) with respect to the Plan, if such judgment, decree or order (I) is issued by a court of competent jurisdiction, or (II) effective as of August 21, 1996, is issued through an administrative process established under state law and has the force and effect of law under applicable state law.

        (c)      The order must clearly specify the following information:

        (i)      the name and last known mailing address (if any) of the Participant and the name and mailing address of each Alternate Recipient covered by the order,

        (ii)      a reasonable description of the type of coverage required to be provided by the Plan to each Alternate Recipient, or the manner in which such type of coverage is to be determined,

        (iii)      the period to which the order applies, and

        (iv)      the name of the Plan.

(d)     The order must not require the Plan to provide any type or form of health Benefit not otherwise provided under the terms of this Plan, except to the extent necessary to meet the requirements of a law relating to medical child support described in Section 1908 of the Social Security Act (as added by the Omnibus Budget Reconciliation Act of 1993).

Section 3.     Procedures.  Upon receipt of any medical child support order by the Plan, the Plan Administrator shall take the following steps:

(a)     The Plan Administrator shall promptly notify the Participant and each Alternate Recipient named in such order of the receipt of a medical support order and the Plan's procedures for determining whether such order is a Qualified Medical Child Support Order, as defined in Section 2 above.  The Alternate Recipient shall be entitled to designate a representative for receipt of copies of any notices that are sent to the Alternate Recipient with respect to a medical child support order.  The notice shall be sent to the Participant and Alternate Recipient at the address specified in the order, or if none is specified, at the address of the Participant or Alternate Recipient last known to the Plan Administrator.

(b)     Within a reasonable period of time after receipt of such order, the Plan Administrator shall determine whether such order is a Qualified Medical Child Support Order, in accordance with the provisions of Section 2 above, and notify the Participant and each Alternate Recipient of such determination.  In making its determination, the Plan Administrator may seek the advice of legal counsel as to whether the order meets the requirements of Section 2 hereof and may, but shall not be required to, invite written or oral comments by the Participant and the Alternate Recipient or their representatives.  If action is taken in accordance with this subparagraph, the Plan's obligation to the Participant and each Alternate Recipient shall be discharged to the extent of any payment made pursuant to the Qualified Medical Child Support Order.

(c)     The Plan Administrator has the complete authority, in its sole and absolute discretion, to construe the terms of these Procedures (and all Plan documents) and to determine the eligibility for, and the extent of, health coverage Benefits under the Plan with respect to an Alternate Recipient.  All such decisions shall be final and binding upon all parties affected thereby.  The Plan Administrator also reserves the right to amend any (or all) of the foregoing Procedure, in its sole discretion, at any time and from time to time, by a written instrument executed by the Plan Administrator or its authorized representative.

Section 4.     Status as Beneficiary or Participant.  Each Alternate Recipient shall be treated as a beneficiary under the Plan, with all the rights accorded to other beneficiaries under the terms hereof and as otherwise provided by law.  In addition, to the extent provided by law, each Alternate Recipient shall be treated as a Participant under the Plan for purposes of the reporting and disclosure requirements of Part 1 of Title I, Subtitle B of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

Section 5.     <u>Definitions</u>.

(a)     "Alternate Recipient" means any child of a Participant who is recognized under a medical child support order as having a right to enrollment under a group health plan with respect to such Participant.

(b)     "Beneficiary" means a beneficiary under the Plan, within the meaning of Section 609 of ERISA.

(c)     "Participant" means a participant under the Plan, within the meaning of Section 609 of ERISA.

(d)     "Plan Administrator" means the plan administrator of the Plan, within the meaning of Section 609 of ERISA.

All other terms or words not defined in these Procedures shall have the same meaning as set forth in the Plan document.

## EXHIBIT B

**EMPIRE HEALTHCHOICE  ASSURANCE, INC : Empire EPO, PPO & INDEMNITY.**
**(Described in Colgate-Palmolive Company Medical Plan Summary Plan Description )**


**ANTHEM BLUE CROSS BLUE SHIELD : Anthem Blue Preferred Primary HMO**


**CIGNA INTERNATIONAL**