NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FORD M. SCUDDER, Treasurer of the State of New Jersey,

    Plaintiff,

v.

COLGATE PALMOLIVE COMPANY,

    Defendant.

Civil Action No. 16-7433 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendant Colgate Palmolive Company's ("Defendant" or "Colgate Palmolive") Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6). (ECF No. 49.) Plaintiff Elizabeth Muoio[1] ("Plaintiff"), in her official capacity as Acting Treasurer for the State of New Jersey, opposed (ECF No. 51), and Defendant replied (ECF No. 52). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED.

**I.    Background**

On August 29, 2016, Plaintiff filed a Complaint in the Superior Court of New Jersey, Mercer County, seeking to compel Defendant to produce documents for examination or audit in an effort to determine whether Defendant is holding any property subject to the New Jersey

---

[1] This action was originally commenced by the former Treasurer of the State of New Jersey, Ford M. Scudder. (ECF No. 1-1.) Although Scudder is no longer the current Treasurer of the State of New Jersey, the Court maintains him as Plaintiff in the caption above for consistency.

Uniform Unclaimed Property Act (the "NJUUPA"), N.J.S.A. 46:30B-1 to -109. (Notice of Removal, Ex. A, Compl., ECF No. 1-1.) On September 6, 2016, the state court issued an order to show cause, directing Defendant to file an answer by October 18, 2016. (Notice of Removal, Ex. A, at 2-4.) On October 18, 2016, Defendant timely removed the instant action to this Court. (Notice of Removal, ECF No. 1.) On October 27, 2016, Plaintiff filed a Motion to Remand to the Superior Court of New Jersey pursuant to 28 U.S.C. § 1452(c) for lack of subject matter jurisdiction. (ECF Nos. 6-9.) This Motion to Remand was denied by the Court on May 31, 2017. (ECF Nos. 17-18.)

On June 26, 2017, Defendant filed a Motion to Dismiss the Complaint. (ECF No. 27.) The Court granted the Motion to Dismiss on November 22, 2017. (ECF Nos. 43, 44, 48.) As a result, Plaintiff filed an Amended Complaint on December 14, 2017. (ECF No. 45.) On January 11, 2018, Defendant filed the present Motion to Dismiss the Amended Complaint. (ECF No. 49.)

## II. Legal Standard

### A. Rule 12(b)(6)

A three-step analysis is required in deciding a motion to dismiss under Rule 12(b)(6): first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Marimar Textiles, Inc. v. Jude Clothing & Accessories Corp.*, No. 17-2900, 2017 WL 4391748, at *3 (D.N.J. Oct. 2, 2017) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted)). In other words, the complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Moreover, on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

### B. The Law of the Case Doctrine

The law of the case doctrine "limits relitigation of an issue once it has been decided" in the same case or litigation. *Hoffman v. City of Bethlehem*, No. 17-2807, 2018 WL 3060115, at *4 (3d Cir. June 20, 2018) (quoting *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002)). As a result, the doctrine of the law of the case is "concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing legal precept in later stages." *Cont'l Airlines*, 279 F.3d at 232-33. "This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *ACLU v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). Moreover, "the law of the case doctrine does not restrict a court's power but rather governs its exercise of discretion." *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998) (citing *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997)).

## III. Parties' Positions

### A. Defendant's Position

Defendant raises three main arguments. First, Defendant argues that its Motion to Dismiss should be granted because ERISA completely pre-empts Plaintiff's claim under the New Jersey Uniform Unclaimed Property Act ("NJUUPA"). (Def.'s Moving Br. 11-15, ECF No. 49-1.)

3

Second, Defendant asserts that the law of the case doctrine prohibits Plaintiff from claiming the right to examine Defendant's books and records under the NJUUPA. (*Id.* at 16-19.) Third and finally, Defendant contends that the Amended Complaint should be dismissed because Plaintiff has not pled administrative exhaustion of available remedies, which the Third Circuit requires before bringing suit to recover benefits due under any ERISA-covered plan. (*Id.* at 19-21.)

### B.  Plaintiff's Position

In response, Plaintiff cites the recent Third Circuit case of *Marathon Petroleum Corp. v. Secretary of Finance for the State of Delaware*, 876 F.3d 481 (3d Cir. 2017) and provides three main counter-arguments.

First, Plaintiff argues that the *Marathon Petroleum* case constitutes a "supervening new law" that exempts the law of the case doctrine from barring the Amended Complaint based on the Court's previous rulings. (Pl.'s Opp'n Br. 9-10, ECF No. 51.)

Second, Plaintiff asserts that the Amended Complaint does not concern anything related to the administration of an ERISA-covered plan (*e.g.*, funding, operation or claim processing) and instead is limited to seeking financial information about payments already made. (*Id.* at 10-12.) Thus, Plaintiff argues that recourse to ERISA administrative remedies – which address only benefits and claim challenges – is not required here. Plaintiff also contends that ERISA does not bar an audit of potentially uncashed healthcare provider checks because Plaintiff does not seek to interfere with the details and plan administration underlying healthcare payment decisions. (*Id.* at 12.) Plaintiff also asserts that by the time payment is authorized and sent to a payee, the administrative process is completed; as a result, Plaintiff is not required to seek administrative remedies under ERISA because processing of the payment effectively ends the administrative process. (*Id.* at 12-13.) Additionally, Plaintiff argues that while ERISA preemption might prevent

4

the turnover of funds, New Jersey still has the right to complete an audit of Defendant and determine the nature and extent of all dormant property held by Defendant. (*Id.* at 13.)

Third, Plaintiff relies on the *Marathon Petroleum* case to ultimately contend that its requested audit is not preempted by ERISA. (*Id.* at 13-14.) Plaintiff also argues that it seeks financial information from uncashed payroll checks and account payable credits (payee name, last known address, the date a check was issued, check amount, and Colgate's bookkeeping procedures to balance the account) and not underlying patient healthcare information related to an ERISA-covered plan (*e.g.*, enrollment data, hospital information, healthcare costs, prices, quality, utilization, and resources). (*Id.* at 14.) Plaintiff further argues that Defendant's contentions "overstate the ambit and application of ERISA to the [Plaintiff's] audit" because ERISA is directed to managing and administering private pension, healthcare and welfare plans, and is not concerned with incorrect addresses, lost mail, or checks that were lost or otherwise uncashed after receipt. (*Id.* at 14-15.) Plaintiff also argues that 29 U.S.C. § 1144 (often cited as § 514, the ERISA provision that preempts any state laws "insofar as they relate to any employee benefit plan") exempts state laws that regulate insurance, banking and securities, "which are primarily financial matters," and because uncashed checks are "financial matters" as well, Plaintiff's audit is exempted from ERISA preemption. (*Id.* at 15-16.)

Plaintiff cites the U.S. Supreme Court case of *Shaw v. Delta Air Lines*, 463 U.S. 85, 100, n.213 (1983), and argues that "state laws having only a tangential effect on an ERISA plan will not be preempted." (*Id.* at 16.) Plaintiff also distinguishes the present facts from another U.S. Supreme Court case, *Gobeille v. Liberty Mutual Insurance Company*, 136 S. Ct. 936, 945 (2016), by contending that the unclaimed property audit here does not "impos[e] novel, inconsistent, and burdensome reporting requirements on [Defendant's] plans" and that Defendant's minimal

5

reporting of uncashed benefit checks and other unpaid credits is identical to all of the other uncashed checks and unpaid credits not relating to benefit plans that Defendant already provided. (*Id.*)

Plaintiff further interprets *Gobeille* as holding that ERISA preempted the Vermont Health Care Law at issue in the case (18 V.S.A. § 9410(c)) because it required health insurers and other entities to report healthcare details related to payments for healthcare claims for inclusion in a state healthcare database, unlike the relevant New Jersey law here. (*Id.* at 17-18) (citing *Gobeille*, 136 S. Ct. at 947.) Thus, Plaintiff argues that the Vermont Health Care Law in *Gobeille* was preempted because ERISA "pre-empts a state law that has an impermissible 'connection with' ERISA plans, i.e., a law that governs, or interferes with the uniformity of, plan administration." (Pl.'s Opp'n Br. 18) (citing *Gobeille*, 136 S. Ct. at 943, 947.) In contrast, Plaintiff contends that the audit here does not seek prohibited information, such as detailed (and private) health insurance claim and enrollment information, information relating to hospital management, and information concerning healthcare costs, prices, quality, utilization, or other resources, but instead simply seeks to determine "whether a check was cashed or a credit received." (Pl.'s Opp'n Br. 18.)

Plaintiff then relies on *Marathon Petroleum* to argue that New Jersey, in order to determine the "precise debtor-creditor relationship" as defined by law that creates the sought-after property at issue, has the right to pursue an "appropriately targeted audit" to decide if there is any of that property that may be subject to escheat. (*Id.* at 18-19.) Plaintiff argues that New Jersey's NJUUPA audit here is an "appropriately targeted audit" unlike the audit conducted pursuant to the Vermont Health Care Law in *Gobeille*, which targeted details and information about employee health benefit plans, health insurance claims, enrollment information and other data "related to" an ERISA employee benefit plan because the audit here "does not target ERISA plans only" and only

6

seeks "limited financial information about all of Colgate's uncashed checks, as to all types of services provided," not any information relating to "Colgate's healthcare plans, Colgate's funding of those plans, the claims presented, or Colgate's claim validation process." (*Id.* at 19-20.)

Finally, Plaintiff asserts that Defendant is arguably granting its medical and dental plans a "charmed existence" never contemplated by Congress and that the Third Circuit case of *Marathon Petroleum* now permits the audit specified in the Amended Complaint. (*Id.* at 20-21.) Hence, Plaintiff argues that Defendant's Motion to Dismiss should be denied. (*Id.* at 21.)

C.  **Defendant's Reply**

Defendant asserts two main counter-arguments in reply.

First, Defendant argues that Plaintiff's reliance on the Third Circuit's recent decision in *Marathon Petroleum* is misplaced and has no bearing on ERISA's preemption of Plaintiff's NJUUPA audit claim because: (i) *Marathon Petroleum* is completely inapplicable to the facts here; (ii) it does not constitute a supervening law; (iii) the case does not preclude the applicability of the law of the case doctrine from applying here; and (iv) it does not affect the preemption analysis under the U.S. Supreme Court case of *Gobeille*. (Def.'s Reply Br. 3-10, ECF. No. 52.)

Second, Defendant argues that Plaintiff continues to ignore the Court's prior two decisions holding that ERISA completely preempts Plaintiff's NJUUPA audit claim. (*Id.* at 15-18.) Specifically, those two prior decisions are: (1) the Court's memorandum and letter opinion from May 31, 2017 denying Plaintiff's Motion to Remand to the Superior Court of New Jersey (ECF Nos. 17-18); and (2) the Court's November 21, 2017 decision granting Defendant's Motion to Dismiss the originally filed Complaint (ECF Nos. 43, 44, 48).

## IV. Discussion

The Court is in agreement with Defendant that *Marathon Petroleum* is inapplicable, primarily because it does not speak to the issue of whether Plaintiff's audit of records and unclaimed property relating to Defendant's ERISA-governed healthcare plan is, in fact, completely preempted by ERISA.

Instead, *Marathon Petroleum* held that federal common law does not prevent a state from performing an escheat audit into gift cards issued by a company's foreign subsidiaries under state escheat laws. *Marathon Petroleum*, 876 F.3d at 485, 498-501. Notably, the acronym "ERISA" or words "Employee Retirement Income Security Act" are not mentioned even once in the opinion. It is clear, therefore, that *Marathon Petroleum* is silent on whether a state's right to audit a company's ERISA-regulated benefit plan is preempted by ERISA, and fails to speak even more broadly on the issue of preemption by ERISA overall. The more relevant authority is the U.S. Supreme Court's decision in *Gobeille*, which the Court cited in its prior decisions. As a result, the Court sees no reason to reiterate the reasoning and analysis of its two prior opinions.

The Court, accordingly, follows the law of the case doctrine. The Court finds that the Amended Complaint, although revised slightly from the originally filed Complaint, is still preempted by ERISA. Here, under *Gobeille,* Plaintiff's audit contains an impermissible "relation to" and "connection with" an ERISA-regulated plan by virtue of the audit requesting production of documents and data related to allegedly unclaimed benefit payments under a benefit plan undeniably governed by ERISA. *Gobeille*, 136 S. Ct. at 943. For example, Plaintiff's audit demands records beyond mere financial information because it requests data relating to "medical benefits, dental benefits, and workers' compensation benefits," the plan's third party administrators ("TPA"), the administrative services agreements for each TPA, coverage rules (*e.g.*,

vision benefits), the plan's administrative claims procedures and more. (*See* Def.'s Reply Br. 12-13.) Moreover, determining whether Defendant has a duty to respond with data relating to an ERISA-regulated benefit plan or whether escheat would be permissible for any allegedly unclaimed benefits (*e.g.*, uncashed checks, unpaid credits) would arguably require a review and interpretation of the plan's terms. Finally, forcing Defendant to respond to Plaintiff's audit may also impact the administration of Defendant's ERISA-governed plan because Defendant has employees in many states, and one of the primary goals of ERISA is to provide a uniform and comprehensive body of law to govern employee benefits that avoids conflicts between multiple state jurisdictions having different laws. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990). Therefore, just as ERISA preempted the Vermont Health Care Law in *Gobeille* because it compelled the production of healthcare data from healthcare providers, insurers and employers that related to healthcare costs, claims and pricing, ERISA preempts Plaintiff's audit under NJUUPA here due to its request of information having an impermissible "relation to" and "connection with" an ERISA-regulated plan. *Gobeille*, 136 S. Ct. at 943, 948-49.

Although the Amended Complaint has been dismissed, Plaintiff will be afforded a final opportunity to amend its Amended Complaint in order to comport with the requirements of ERISA, specifically ERISA § 502(a)(1)(B).

### V. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss the Amended Complaint is GRANTED and the Amended Complaint is dismissed, without prejudice. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** August 31, 2018

9